63 F.3d 1528
 The GEHL GROUP, a Florida corporation; Michael K. Brady;
Fraternal Order of Police, Northern Colorado Lodge
# 3; and Fraternal Order of Police,
Colorado Metroplex,
Plaintiffs-Appellants,
v.
Thomas KOBY, individually and in his official capacity as
Chief of Police for the Police Department of the City of
Boulder, Colorado; George Epp, individually and in his
official capacity as Sheriff of Boulder County, Colorado;
Boulder City Police Department; Boulder County Sheriff's
Department; Boulder, City of; Board of County
Commissioners of the County of Boulder, Colorado; Dave
Hayes, individually and in his official capacity as a
Sergeant for the Police Department of the City of Boulder,
Colorado; Detective Ross, individually and in his official
capacity as a Detective for the Police Department of the
City of Boulder, Colorado; and John Does No. 1-12,
Defendants-Appellees.
 No. 94-1016.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 16, 1995.
 
 Donald B. Gentry of Wood, Ris & Hames, P.C., Denver, CO (Michael E. Gurley, of Hamilton & Faatz, Denver, CO, with him on the brief), for plaintiffs-appellants.
 Robert M. Liechty of Halaby, McCrea & Cross, Denver, CO (Theodore S. Halaby, of Halaby, McCrea & Cross, and Thomas B. Buescher, of Brauer, Buescher, Valentine, Goldhammer & Kelman, P.C., Denver, CO, co-counsel, for defendants-appellees Dave Hayes and Detective Ross, with him on the brief) for defendants-appellees Thomas Koby, the Boulder City Police Dept., City of Boulder, Dave Hayes, and Detective Ross.
 Thomas B. Buescher, of Brauer, Buescher, Valentine, Goldhammer & Kelman, P.C., Denver, CO, for defendants-appellees Dave Hayes and Detective Ross, submitted on the briefs.
 H. Lawrence Hoyt, Boulder County Atty., and Andrew R. MacDonald, Asst. Boulder County Atty., Boulder, CO, for defendants-appellees George Epp, the Boulder County Sheriff's Dept., and the Bd. of County Com'rs of the County of Boulder, submitted on the briefs.
 Before BRORBY, Circuit Judge, McWILLIAMS, Senior Circuit Judge and EBEL, Circuit Judge.
 EBEL, Circuit Judge.
 
 
 1
 Plaintiffs-Appellants ("Plaintiffs"), two Colorado chapters of the Fraternal Order of Police ("FOP") and their solicitation agent, the Gehl Group ("Gehl"), as well as Gehl's regional manager Michael Brady ("Brady"), brought this action under 42 U.S.C. Secs. 1983 & 1985 and Colorado state law. Plaintiffs charged that various law enforcement and other officials of the City of Boulder ("City Defendants") and the County of Boulder ("County Defendants") tried to prevent them from soliciting charitable contributions in the Boulder area in violation of their constitutional rights. Specifically, Plaintiffs maintain that Defendants filed baseless criminal charges against them and selectively and vindictively prosecuted them because of FOP's constitutionally protected activities in contravention of their First Amendment, equal protection, procedural due process, and substantive due process rights. The district court rejected each of these claims and granted summary judgment for Defendants. We conclude that Plaintiffs have failed to establish that Defendants abridged their constitutional rights, and affirm the judgment of the district court.
 
 I. BACKGROUND
 
 2
 The FOP is a private national association of law enforcement personnel that engages in a variety of activities to promote the interests of its members. Northern Colorado Lodge No. 3 ("Lodge No. 3") and the Colorado Metroplex are local FOP groups affiliated with the national association and are active in various Colorado counties, including Boulder County.[1] Beginning in 1988, Lodge No. 3, the Colorado Metroplex, and other Colorado FOP chapters hired Gehl to assist in their fund-raising efforts by soliciting charitable contributions and selling tickets to entertainment shows sponsored by the FOP.
 
 
 3
 As a result of Gehl's activities in the Boulder area, the Boulder Police Department began to receive complaints from citizens in January 1991 alleging that Gehl solicitors were misrepresenting that contributions would go directly to the Boulder Police Department and not to the FOP. The volume of complaints increased when an article appeared in The Daily Camera newspaper in Boulder on January 9, 1991 in which Boulder Police Department Sergeant David Hayes ("Hayes") disclaimed the department's association with the fund-raising solicitations. After Hayes verified two of the citizen complaints in the summer of 1991, Boulder police detective John Ross ("Ross") drafted a criminal complaint against Gehl's regional manager Michael K. Brady ("Brady"), charging Brady with violation of Colorado's Fraud in Effecting Sales Act, codified at Colo.Rev.Stat. Sec. 18-5-301.[2] Ross obtained the approval of the Boulder Police Department's legal advisor before drafting the complaint; Hayes then submitted the complaint to the district attorney's office.
 
 
 4
 Deputy District Attorney Joan Nagel ("Nagel") reviewed the summons and complaint, as well as a file from the district attorney's consumer affairs division chronicling complaints about FOP fund-raising activities, and concluded that, "my recommendation at this time is not to begin a criminal prosecution." Appellant App. at 64. Nagel advised against pursuing criminal charges because the FOP had been cooperative in dealing with the problem, had taken affirmative steps to prevent future misrepresentations, was sending out accurate literature, and actually had several Boulder area law enforcement personnel as members. Nevertheless, Nagel stated that "[a]fter reading over the case files and the statute, I believe we have a prosecutable case," and she proceeded to provide Hayes with advice on how to bring charges if he decided to do so. Nagel suggested that, if the department wished to prosecute, the summons should be (1) issued specifically for Fraud in Effecting Sales under Colo.Rev.Stat. Sec. 18-5-301(1)(e), a class two misdemeanor; (2) issued to the FOP affiliates and/or Gehl, depending on who was making the misrepresentations, and not to any individuals (because one identified offending solicitor had already left Gehl, and a charge against Gehl would have a more long-lasting impact); and (3) served on the registered agent(s) of the corporation(s).
 
 
 5
 Contrary to Nagel's recommendation, Ross served a summons on Brady, the designated representative for Gehl, naming Brady as the defendant but describing the offense as Gehl's making of misleading statements. Allegedly, when Ross wrote the summons he commented to Brady that "I don't want to write this Summons; I don't think this is much of a case; I'm following orders and have to do it; I want you to know I don't want to do this." Appellant App. at 92.
 
 
 6
 In any event, before the trial was scheduled to begin, Plaintiffs requested a meeting with Boulder law enforcement representatives. A meeting was held on January 7, 1992 and attended by Boulder Chief of Police Thomas Koby ("Koby"), Hayes, Ross, Sheriff of Boulder County George Epp ("Epp"), attorneys from the district attorney's office and the Boulder Police Department, Fort Collins police officer and the president of the Colorado FOP at the time, Scott Goff ("Goff"), attorneys representing the FOP and Gehl, Brady (via a conference call), the president of the Boulder Police Benefit Association, who was the collective bargaining representative for Boulder police officers at the time, and the head of the University of Colorado Police. The parties dispute what transpired and was said at the meeting.
 
 
 7
 Goff maintains that FOP representatives began the meeting by stating that they were willing to take any corrective measures necessary to prevent future misrepresentations, but that Sheriff Epp responded, "we ran the Denver Sheriff's Union and the Aurora PPA out of Boulder and if you don't stop soliciting, there will be felonies filed against you. I don't want you calling Boulder." Appellant App. at 88. Brady corroborates Goff's recollection. Appellant App. at 93. Furthermore, Goff and Brady assert that Koby called the FOP "prostitutes of the law enforcement profession." Koby contends that he simply stated that the FOP was "prostituting themselves off the back of the police officers by allowing themselves to be sold so cheaply," and that at the time he made the statement he understood that professional fund-raisers like Gehl only return 10 percent of collected money to the charitable organization. Appellant App. at 69. Nevertheless, according to Goff and Brady, Koby continued to warn that although Plaintiffs were not committing a felony or violating the law and that the charges were being dropped, he wanted the FOP out of Boulder County and would continuously file charges in the future until "something stuck" or the FOP stopped calling in Boulder. Appellant App. at 89, 92. When Goff and Brady told Koby that his actions were illegal and different from how other solicitors were treated in Boulder County, they maintain that Koby responded that he did not care about other solicitors, wanted the FOP to stop soliciting in Boulder County, and would continue to solicit complaints from citizens.
 
 
 8
 Koby and Epp do not explicitly deny making the statements described by Goff and Brady. However, they contend that although FOP representatives offered to improve their solicitation methods, they were unable to guarantee that none of their solicitors would make misrepresentations. As such, Koby and Epp explain that Plaintiffs were told that they would or could face prosecution if they remained unable to comply with the law. Goff and Brady deny that they stated that they could not control their solicitors, and reiterate that Koby and Epp warned that charges would be filed until they stopped soliciting.
 
 
 9
 Two days after the meeting, the district attorney moved to dismiss the criminal case, stating that (1) the summons and complaint were improperly issued to Brady on behalf of Gehl; (2) the charges were improperly brought under the Fraud in Effecting Sales Act rather than the Colorado Charitable Solicitations Act, codified at Colo.Rev.Stat. Secs. 6-16-101 et seq.; and (3) the people intended to investigate the case further and refile at a later date. Although the charges were dropped, Plaintiffs assert that Defendants continued to discriminate against them through an ongoing investigation by the police and sheriff's departments. Plaintiffs also state that the Chief of the Lafayette Police Department threatened to fire an FOP member (who is not a plaintiff in this action) if he continued to allow his name to be used in any Boulder County solicitations. Hayes acknowledges that he investigated some citizen complaints following the meeting, and asserts that none formed the basis of new charges. Koby states that he intended to solicit citizen complaints after the meeting, but that plans were dropped when the person who would have headed the effort changed jobs. Nevertheless, Plaintiffs maintain that FOP solicitations in the Boulder area continued to decline from past levels.
 
 
 10
 Plaintiffs then brought suit in the United States District Court for the District of Colorado, raising federal and state law claims and requesting compensatory and punitive damages and injunctive relief. In particular, Plaintiffs alleged federal claims under (1) 42 U.S.C. Sec. 1983 for violation of their First and Fourteenth Amendment rights; and (2) 42 U.S.C. Sec. 1985 for Defendants' purported conspiracy to violate their civil rights. Plaintiffs asserted state law claims for (1) interference with business relations; (2) malicious prosecution; (3) abuse of process; (4) defamation; and (5) outrageous conduct. The City Defendants and County Defendants answered and filed separate motions for summary judgment based in part on the defense of qualified immunity. The district court granted both motions and dismissed Plaintiffs' action.[3] Gehl Group v. Koby, 838 F.Supp. 1409, 1419-20 (D.Colo.1993). First, the court found that, even assuming that Plaintiffs asserted a clearly established First Amendment right to solicit charitable contributions or a due process right under the Fourteenth Amendment to conduct a lawful business, Defendants were entitled to qualified immunity because a reasonable police official would have believed that the actions taken against Plaintiffs were lawful. Second, the court found that Plaintiffs failed to state a cognizable claim that Defendants violated their Fourteenth Amendment substantive due process rights by verbally threatening to prevent them from operating in Boulder County, or their equal protection rights by treating them differently than other solicitors. Because Plaintiffs did not prevail on any of their underlying claims, the court held that it did not need to reach Plaintiffs' conspiracy claim. Finally, the court dismissed Plaintiffs' pendent state law claims without prejudice.[4] Plaintiffs then filed this timely appeal.
 
 II. DISCUSSION
 
 11
 We review the district court's grant of summary judgment de novo, applying the same legal standards employed by the district court. James v. Sears, Roebuck, & Co., 21 F.3d 989, 997-98 (10th Cir.1994). "Summary judgment is appropriate if 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.' " Hagelin for President Comm. v. Graves, 25 F.3d 956, 959 (10th Cir.1994) (quoting Fed.R.Civ.P. 56(c)), cert. denied, --- U.S. ----, 115 S.Ct. 934, 130 L.Ed.2d 880 (1995). In making this determination, "we construe the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Blue Circle Cement, Inc. v. Board of County Comm'rs, 27 F.3d 1499, 1503 (10th Cir.1994).
 
 
 12
 In the instant case, the district court granted summary judgment as to some of Plaintiffs' claims on the merits and as to others on the grounds of qualified immunity. The individual defendants' qualified immunity shields them from liability if their actions did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In analyzing qualified immunity claims, we first ask if a plaintiff has asserted the violation of a constitutional right at all, and then assess whether that right was clearly established at the time of a defendant's actions. Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Once a public official raises a qualified immunity defense, the plaintiff bears the burden of (1) coming forward with sufficient facts to show that the defendant's conduct violated the law; and (2) demonstrating that the relevant law was clearly established when the alleged violation occurred. Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir.1988). Where a plaintiff fails to demonstrate that a defendant's conduct violated the law, we need not reach the issue of whether the law was clearly established. Hinton v. City of Elwood, Kan., 997 F.2d 774, 782 (10th Cir.1993).
 
 
 13
 Plaintiffs claim that Defendants singled out the FOP in response to their constitutionally protected solicitation efforts for the purpose of suppressing those activities.[5] Specifically, Plaintiffs maintain that Defendants' arbitrary and discriminatory attempts to prevent them from soliciting in Boulder violated their First Amendment right to free expression and Fourteenth Amendment rights to procedural due process, substantive due process, and equal protection of the law. We address each claim in turn and hold that Plaintiffs have failed to show that Defendants violated their constitutional rights, clearly established or otherwise.
 
 A. First Amendment
 
 14
 Plaintiffs' First Amendment claim is essentially one of vindictive prosecution, claiming that Defendants prosecuted them in retaliation for their exercise of First Amendment rights.[6] There is no doubt that Plaintiffs have the right under the First Amendment to solicit charitable contributions. As the Supreme Court held in Riley v. National Fed'n of the Blind, "the solicitation of charitable contributions is protected speech," 487 U.S. 781, 789, 108 S.Ct. 2667, 2673, 101 L.Ed.2d 669 (1988), and government action which chills such speech contravenes the First Amendment, id. at 794, 108 S.Ct. at 2676. Of course, that right is not absolute, and the First Amendment does not immunize Plaintiffs from prosecution under Colorado's generally applicable and otherwise valid fraud laws, which Plaintiffs do not challenge as facially invalid. See Roberts v. United States Jaycees, 468 U.S. 609, 628, 104 S.Ct. 3244, 3255, 82 L.Ed.2d 462 (1984) (explaining that practices "like violence or other types of potentially expressive activities that produce special harms distinct from their communicative impact ... are entitled to no constitutional protection"); Citizen Publishing Co. v. United States, 394 U.S. 131, 139-40, 89 S.Ct. 927, 931-32, 22 L.Ed.2d 148 (1969) (upholding regulation of newspapers under generally applicable antitrust laws); Breard v. Alexandria, 341 U.S. 622, 642, 71 S.Ct. 920, 932, 95 L.Ed. 1233 (1951) (upholding conviction of magazine subscription salesman under municipal ordinance prohibiting certain types of solicitation and explaining that "[f]reedom of speech or press does not mean that one can talk or distribute where, when and how one chooses").
 
 
 15
 Nevertheless, government actors cannot intentionally suppress constitutionally protected expression because of its content and avoid First Amendment scrutiny simply by claiming that they were acting pursuant to an otherwise valid criminal law. As we stated generally in DeLoach v. Bevers, "[a]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under Sec. 1983 even if the act, when taken for a different reason, would have been proper." 922 F.2d 618, 620 (10th Cir.1990) (quoting Matzker v. Herr, 748 F.2d 1142, 1150 (7th Cir.1984)), cert. denied, 502 U.S. 814, 112 S.Ct. 65, 116 L.Ed.2d 41 (1991). "[A] prosecution motivated by a desire to discourage expression protected by the First Amendment is barred and must be enjoined or dismissed, irrespective of whether the challenged action could possibly be found to be unlawful." United States v. P.H.E., Inc., 965 F.2d 848, 853 (10th Cir.1992).[7] As the Supreme Court said in Dombrowski v. Pfister, "[t]he chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure." 380 U.S. 479, 487, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965). Accordingly, in the instant case, we must address Plaintiffs' contention that Defendants were acting to suppress their protected expression and not to enforce Colorado's criminal laws.[8]
 
 
 16
 However, when the issue is presented in the context of the defendant's claim for summary judgment based on qualified immunity, some special rules apply. When state of mind is an essential element of the plaintiff's substantive claim, we have adopted a modified approach to considering a public official's qualified immunity defense on a motion for summary judgment. First, the defendant "must make a prima facie showing of the 'objective reasonableness' of the challenged conduct." Bruning v. Pixler, 949 F.2d 352, 356-57 (10th Cir.1991) (quoting Lewis v. City of Ft. Collins, 903 F.2d 752, 755 (10th Cir.1990)), cert. denied, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). If Defendants carry their burden of showing objective reasonableness, the burden then shifts to Plaintiffs to establish that Defendants acted on the basis of a culpable subjective state of mind. Once the defendant has shown his or her objective reasonableness, the plaintiff's burden to establish subjective motivating animus becomes heightened, requiring specific and concrete evidence rather than mere speculation. Bruning, 949 F.2d at 357; Pueblo Neighborhood Health Ctrs., 847 F.2d at 649.[9]
 
 
 17
 Applying that methodology, we conclude that Defendants have shown that their actions were objectively reasonable by demonstrating that they acted with probable cause. We further conclude that Plaintiffs have failed to rebut that showing with specific evidence that Defendants acted with the impermissible motive of suppressing their protected speech.
 
 
 18
 Defendants have shown objective reasonableness by demonstrating that a reasonable officer with knowledge of the information that they possessed would have believed that there was a basis to bring charges against Brady and Gehl. A showing of probable cause to issue an arrest warrant clearly establishes objective reasonableness. Here, City Defendants[10] only issued Brady and Gehl a summons and complaint after receiving numerous citizen complaints about misrepresentations made by Gehl's solicitors and investigating several of those complaints. Furthermore, the Boulder Police Department's legal advisor approved the charges, and District Attorney Nagel concluded that the police had a prosecutable case. None of Nagel's reasons for recommending against bringing charges undercut her conclusion that probable cause existed to prosecute. Similarly, Ross's alleged statement that he did not think "this is much of a case" does not refute the objective evidence upon which a reasonable officer would have believed that Gehl or Brady were violating Colorado law.[11] Accordingly, we conclude that Defendants have made a prima facie showing that the issuance of the summons and complaint was objectively reasonable.
 
 
 19
 Defendants similarly have established that their threats to bring future charges were objectively reasonable. There had been a pattern of past conduct that reasonably appeared to have been in violation of the law, and there was a substantial basis to doubt that Brady or Gehl could adequately control their solicitors in the future.[12]
 
 
 20
 Thus, Defendants have established that their conduct was objectively reasonable, and the burden then shifted to Plaintiffs to support their allegation that Defendants singled them out for prosecution in retaliation for and to suppress their legal and constitutionally protected solicitation efforts. To avoid summary judgment, Plaintiffs must establish that "as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or punitive animus towards the defendant because he exercised his specific legal right." P.H.E., 965 F.2d at 860 (quoting United States v. Raymer, 941 F.2d 1031, 1042 (10th Cir.1991)).[13] That is, Plaintiffs must produce specific evidence that, notwithstanding the existence of probable cause, it is likely that, but for the exercise of their constitutional right to solicit in Boulder, Defendants would not have brought or threatened to bring charges for any illegal misrepresentations for which Plaintiffs were alleged to be responsible.
 
 
 21
 Although Plaintiffs have demonstrated that Defendants exhibited some hostility toward the FOP, they have not introduced evidence that the hostility was rooted in disapproval of the FOP's protected activity, as opposed to disapproval of its allegedly misleading, potentially illegal, and unprotected solicitations. See Phelps v. Hamilton, 59 F.3d 1058, 1066-67 (10th Cir.1995) (noting that "no prosecutor looks favorably upon lawbreakers" and that animosity in and of itself does not establish retaliatory motive). Plaintiffs allege that Defendants treated other non-police soliciting groups in a different manner; however, they have offered no evidence that citizens complained about these other groups or that Defendants refrained from prosecuting them in the face of evidence that they also were violating Colorado's fraud laws. Furthermore, Plaintiffs were subject to only a single prosecution--which we have already held was supported by probable cause--and, therefore, cannot identify a pattern of harassment from which we might be able to infer Defendants' retaliatory motivations. See W.E.B. DuBois Clubs of America v. Clark, 389 U.S. 309, 312-13, 88 S.Ct. 450, 452-53, 19 L.Ed.2d 546 (1967) (contrasting a pattern of prosecutions brought in response to the exercise of First Amendment rights with conclusory allegations that a threatened prosecution was based upon an unconstitutional purpose).
 
 
 22
 Although Plaintiffs point to statements made by Koby and Epp regarding their intention to file future charges, those statements are ambiguous and easily susceptible to an interpretation that Defendants were of the belief that Plaintiffs would engage in further unlawful activity, and that when that occurred, they would bring further charges. None of the statements constitute the kind of strong evidence of unconstitutional motivation that Plaintiffs were obligated to present to avoid summary judgment once Defendants came forward with evidence that their conduct was objectively reasonable--and indeed even predicated upon probable cause. Cf. Siegert, 500 U.S. at 235, 111 S.Ct. at 1795 (Kennedy, J., concurring) ("The heightened pleading standard is a necessary and appropriate accommodation between the state of mind component of malice and the objective test that prevails in qualified immunity analysis as a general matter.").
 
 
 23
 Plaintiffs, thus, have failed to carry their heavy burden of producing specific evidence that Defendants acted with an unconstitutional motive and that it was likely that Plaintiffs would not have been prosecuted or threatened but for their exercise of their constitutional right to solicit charitable contributions in Boulder. Accordingly, we reject Plaintiffs' First Amendment claim and affirm the district court's grant of summary judgment on that issue for the reasons articulated herein.
 
 B. Equal Protection
 
 24
 For substantially the same reasons, we also reject Plaintiffs' equal protection claim. Plaintiffs' equal protection claim is essentially one for selective prosecution, claiming that they were singled out for prosecution because of their exercise of a fundamental right.[14] Plaintiffs maintain that Defendants violated their equal protection rights by treating them differently from other solicitation groups in the Boulder area because of an animosity toward their constitutionally protected solicitation activities. Such differential treatment could implicate equal protection concerns, just as it could First Amendment concerns. As the Supreme Court explained in Police Dept. of Chicago v. Mosley, where city officials apply an ordinance differentially to similarly situated groups, "the equal protection claim [] is closely intertwined with First Amendment interests." 408 U.S. 92, 94-95, 92 S.Ct. 2286, 2289, 33 L.Ed.2d 212 (1972); see also Wayte v. United States, 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985) (Although officials enjoy particularly broad discretion to decide whether to bring charges when probable cause exists to believe that someone has committed a crime, "the decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, including the exercise of protected statutory and constitutional rights.") (internal quotations and citations omitted). However, Plaintiffs have failed to establish that Defendants treated them differently than other similarly situated solicitation groups, or that Defendants brought the prosecutions against them because of their membership in a protected class or their exercise of fundamental rights.
 
 
 25
 Plaintiffs state that "[t]here is no evidence that other non-police soliciting groups were run out of town...." Appellant Br. at 26. However, it remains Plaintiffs' burden to establish that they were treated discriminatorily. Defendants had probable cause to bring charges against Brady and/or Gehl. In contrast, Plaintiffs have produced no evidence that Defendants did not bring charges against other groups who were breaking the law, or who police had probable cause to believe were breaking the law. Plaintiffs' assertion to the contrary notwithstanding, Koby's statement at the January 7 meeting that he did not care about other solicitors but was concerned about the FOP does not constitute an admission that he was, in fact, treating other similarly situated groups differently. Plaintiffs' equal protection claim must fail because they have not made even the threshold showing that they were treated differently than other similarly situated solicitation groups.
 
 C. Procedural Due Process
 
 26
 Plaintiffs next argue that Defendants deprived them of their liberty right to conduct a lawful trade or occupation without due process of law. Plaintiffs base this procedural due process claim on the filing of charges against them, the threat to bring future charges, and Koby's allegedly defamatory labelling of the FOP as the "prostitutes of the law enforcement profession." Plaintiffs maintain these actions, together, damaged their reputation and prevented them from pursuing their lawful business of soliciting contributions. For the reasons outlined below, we hold that Plaintiffs have not established that Defendants unconstitutionally deprived them of any protected liberty interest.
 
 
 27
 Assuming Plaintiffs possess a protected liberty interest in pursuing their chosen trade or occupation, see, e.g., Wroblewski v. City of Washburn, 965 F.2d 452, 455 (7th Cir.1992) ("The concept of liberty protected by the due process clause has long included occupational liberty--the liberty to follow a trade, profession, or other calling.") (internal quotation omitted), Defendants have not deprived them of that interest without due process of law. First, as to Koby's prostitute remark, Plaintiffs have not shown that the comment--even if defamatory--caused them any adverse impact beyond their private meeting with Defendants, or compromised their ability to solicit contributions. Moreover, even if Koby damaged the FOP's reputation, "the interest in reputation ... is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law." Paul v. Davis, 424 U.S. 693, 712, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976).[15]
 
 
 28
 Plaintiffs contend that the harm they suffered from Koby's statements rose beyond the mere stigma held not actionable in Paul v. Davis, because it was coupled with Defendants' literal exclusion of Plaintiffs from the Boulder market. Yet Plaintiffs were not prevented from operating in Boulder, and the record suggests Plaintiffs continued to operate in Boulder after the remarks in question. Furthermore, to the extent Plaintiffs suffered some curtailment of their activities, it was the result of proper and objectively reasonable law enforcement actions. As we explained above, Defendants had probable cause both to file actual charges--even though those charges were later dismissed--and to threaten to bring future charges should Plaintiffs break the law. Thus, Defendants accorded Plaintiffs due process before interfering with their ability to solicit contributions. As the Supreme Court explained in Gerstein v. Pugh, "[t]he Fourth Amendment [probable cause requirement] was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases...." 420 U.S. 103, 125 n. 27, 95 S.Ct. 854, 869 n. 27, 43 L.Ed.2d 54 (1975). Therefore, to the extent Defendants deprived Plaintiffs of any protected liberty interest, they accorded Plaintiffs all of the process that they were due.
 
 D. Substantive Due Process
 
 29
 Plaintiffs claim finally that Defendants' actions were so arbitrary that they "shock the conscience" in contravention of substantive due process norms. We disagree. First, Defendants' actions were objectively reasonable and do not nearly approach the arbitrariness required to shock the conscience. Second, we must guard against imprudently expanding the concept of substantive due process. Albright, --- U.S. at ----, 114 S.Ct. at 812 (quoting Collins v. Harker Heights, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992)). Plaintiffs' substantive due process claim is based on their charge that Defendants' actions were not justified by law enforcement concerns but were instead motivated by a desire to prevent Plaintiffs from exercising their constitutional rights. Just as in Albright where the Supreme Court explained that a challenge to a prosecution as being without probable cause should be brought under the specific guarantees of the Fourth Amendment rather than the generalized protections of substantive due process, Plaintiffs' claims are properly analyzed under the more specific guarantees of the First Amendment, Equal Protection Clause, and procedural component of the Due Process Clause. Having already addressed those claims, we conclude that Plaintiffs have not established that Defendants violated their constitutional rights, and do not reach the issue of whether the law upon which Plaintiffs rely was clearly established.[16]III. CONCLUSION
 
 
 30
 For the foregoing reasons, we hold that Defendants were entitled to summary judgment and AFFIRM the decision of the district court.
 
 
 
 [1]
 Lodge No. 3 has its principal place of business in Fort Collins and is active in Larimer, Weld, and Boulder counties. The Colorado Metroplex represents 21 lodges active in the Denver metropolitan area, including Boulder County
 
 
 [2]
 Under Colorado law, a peace officer can issue a summons and complaint for "a misdemeanor or a petty offense committed in his presence or, if not committed in his presence, which he has probable cause to believe was committed and probable cause to believe was committed by the person charged." Colo.Rev.Stat. Sec. 16-2-104
 
 
 [3]
 The district court did not explicitly address Plaintiffs' claims against the municipal entities, which would not be entitled to qualified immunity. Nevertheless, the court granted Defendants' motions for summary judgment in all respects, and Plaintiffs do not raise the issue of municipal liability in this appeal. Accordingly, we do not address that issue. However, we note that our disposition of Plaintiffs' claims against the individual defendants would also resolve all claims against the municipal defendants
 
 
 [4]
 Plaintiffs do not appeal the court's dismissal of their pendent state law claims without prejudice. Accordingly, we do not address those claims
 
 
 [5]
 Defendants argue that Plaintiffs failed to raise a claim below based on Defendants' alleged improper motive and should, therefore, be barred from raising such a claim on appeal. As a general rule, we will not consider an issue raised for the first time on appeal. Hicks v. Gates Rubber Co., 928 F.2d 966, 970 (10th Cir.1991). However, we conclude that Plaintiffs alleged claims based on Defendants' purported retaliatory motive before the district court. First, Plaintiffs' complaint clearly asserted claims based on the First Amendment, see, e.g., Appellant App. at 7, 9, pp 44 & 52, and emphasized both that Defendants prosecuted them without probable cause and discriminatorily singled them out for selective prosecution, see, e.g., id. at 4, 7, pp 25 & 42-45. Second, although Plaintiffs stated in their response to Defendants' motion for summary judgment in one section that a claim "boiled down" to whether Defendants acted with probable cause, Appellee Supp.App. at 33, 39, Plaintiffs addressed a whole section to Defendants' improper motive and stated explicitly that even if the court found that Defendants acted with probable cause, they should be able to conduct discovery to explore Defendants' motives, id. at 42-46, 58. Moreover, the district court implicitly acknowledged that Plaintiffs raised claims based on motive when it stated that "Plaintiffs argue that Defendants acted with improper motive," even though the court proceeded to find that Plaintiffs failed to show how such arguments supported a viable First or Fourteenth Amendment claim. Gehl Group, 838 F.Supp. at 1419 n. 9. As explained in the text, we disagree with the court's suggestion that motive is irrelevant to Plaintiffs' claims, but nonetheless affirm the court's dismissal of Plaintiffs' action
 
 
 [6]
 In a vindictive prosecution claim, the claimant has the burden of showing (1) actual vindictiveness; or (2) circumstances which would give rise to a presumption of vindictiveness. United States v. P.H.E., Inc., 965 F.2d 848, 860 (10th Cir.1992) (quoting United States v. Raymer, 941 F.2d 1031, 1040 (10th Cir.1991)). The burden then shifts to the prosecution to establish objectively legitimate reasons for its actions, and the ultimate inquiry is whether "as a practical matter there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for the hostility or punitive animus towards the defendant because he exercised his specific legal rights." Raymer, 941 F.2d at 1042
 
 
 [7]
 Several other examples exist of otherwise proper government actions rendered unconstitutional when undertaken with the intent of suppressing expression because of its content. For example, as the Supreme Court explained in Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, although a school board could refuse to rehire a nontenured teacher for "no reason whatever" and without a hearing, it violated the First Amendment if its decision not to rehire was "made by reason of his exercise of constitutionally protected First Amendment freedoms." 429 U.S. 274, 283-84, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977); see also Cornelius v. NAACP Legal Defense and Educ. Fund, Inc., 473 U.S. 788, 812-13, 105 S.Ct. 3439, 3454-55, 87 L.Ed.2d 567 (1985) (explaining that the existence of neutral and, therefore, otherwise permissible grounds for limiting expression does not immunize government action that is in reality motivated by a desire to suppress a particular point of view); Pueblo Neighborhood Health Ctrs., 847 F.2d at 647 (stating that "the governmental actor's intent, motive, or purpose is the critical element" in First Amendment and equal protection claims)
 
 
 [8]
 Albright v. Oliver, --- U.S. ----, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), are not to the contrary. Albright simply provides that all constitutional challenges to a prosecution based on the claim that the prosecution was initiated without probable cause must be brought and judged under the Fourth Amendment, and not according to the more generalized substantive due process analysis. --- U.S. at ----, 114 S.Ct. at 813. Thus, Albright extended Graham, which provided that excessive force claims are analyzed under the Fourth Amendment according to an objective reasonableness standard, and not under broader notions of substantive due process, 490 U.S. at 395, 109 S.Ct. at 1871. Neither case, read separately or in conjunction, provides that the Fourth Amendment governs claims that a prosecution was motivated by a discriminatory animus or a desire to suppress a particular viewpoint. In fact, the Court had no occasion to establish such a rule in Albright or Graham, because those cases only involved challenges to police conduct based on the lack of probable cause and not based on the alleged abridgement of any other specific constitutional rights. Claims that police acted without probable cause should be analyzed under the Fourth Amendment, but claims that police acted to suppress protected expression or with racially discriminatory animus, for example, should be analyzed under the equally explicit constitutional guarantees of the First Amendment and Equal Protection Clause respectively
 
 
 [9]
 Bruning involved a Fourth and Fifth Amendment claim, and no such claims are asserted here. Bruning is not cited to suggest that a First Amendment vindictive prosecution claim is governed by Fourth or Fifth Amendment analysis. Rather, it is cited for its discussion of the process to follow in analyzing a defense of qualified immunity when the underlying substantive claim is one that involves an element of the defendant's subjective intent. As Bruning explains, ordinarily an analysis of qualified immunity involves only an objective evaluation of the defendant's reasonableness. However, when the underlying substantive claim involves an element of a defendant's subjective intent, the element of motive cannot be wholly disregarded. In such a situation, a two-step process is required. The first step is the familiar objective one, and the burden falls on the defendant to make a prima facie showing of the reasonableness of the challenged conduct. If the defendant makes such a showing, then the second step incorporates a subjective element and shifts the burden to the plaintiff to produce "specific evidence of the defendant's culpable state of mind" in order to survive summary judgment. Bruning, 949 F.2d at 356-57. The plaintiff's burden in the second step of showing impermissible motive is heightened and requires specific evidence because the defendant in step one will have already established that by objective standards the conduct was reasonable. For other Tenth Circuit cases utilizing this two-step analysis in evaluating qualified immunity claims when the underlying claim involves an element of subjective intent, see Hicks v. City of Watonga, Okla., 942 F.2d 737, 749 (10th Cir.1991) (First Amendment retaliatory discharge claim); Lewis, 903 F.2d at 754-60 (employment race discrimination claim); Pueblo Neighborhood Health Ctrs., 847 F.2d at 649 (First Amendment and race discrimination claims based on impermissibly motivated search and seizure)
 
 
 [10]
 Plaintiffs have not produced any evidence that County Defendants were involved in the filing of charges against Brady and Gehl. As such, the only way that County Defendants potentially can be liable is for the statements made by Epp at the January 7, 1992 meeting
 
 
 [11]
 Plaintiffs argue that even if probable cause existed to believe that misrepresentations were made by Gehl solicitors, police lacked any reasonable basis to believe that Brady or Gehl could be criminally liable for those misrepresentations. The summons listed Brady as the named defendant and described the offense as Gehl's making of misleading statements. Ultimately, the district attorney moved to dismiss the charges in part because the summons and complaint were improperly issued to Brady on behalf of Gehl. Nevertheless, we agree with the district court that the number of complaints received by the Boulder police, and the supervisory role of Brady, provided an objective basis to bring charges initially against Gehl and Brady. Moreover, the mere fact that charges were ultimately dismissed does not demonstrate that there was no reasonable basis for bringing the charges initially. Cf. Withrow v. Larkin, 421 U.S. 35, 57, 95 S.Ct. 1456, 1469, 43 L.Ed.2d 712 (1975) (noting that "there is no logical inconsistency between a finding of probable cause and an acquittal in a criminal proceeding")
 
 
 [12]
 Neither do Defendants' actions following the meeting demonstrate that Defendants would prosecute Plaintiffs even if they were not breaking the law. As a starting matter, no new charges were ever filed. Koby admitted his intent to solicit new complaints, but never took any such actions. Furthermore, Hayes' acknowledgment that he investigated several additional complaints certainly does not demonstrate that Defendants intended to file charges without regard to their merit
 
 
 [13]
 P.H.E. and Raymer involved challenges to prosecutorial conduct as part of a defense to a prosecution. However, we view those cases as instructive despite the different context of a constitutional tort involved in the present action. Moreover, a similar burden of proof has been placed on those challenging otherwise discretionary government conduct in other contexts. See Mt. Healthy, 429 U.S. at 287, 97 S.Ct. at 576 (providing that plaintiff in constitutional tort action had burden of showing that his constitutionally protected conduct was a "substantial factor" or "motivating factor" in his firing); Phelps v. Hamilton, 59 F.3d 1058, 1066 (10th Cir.1995) (providing that federal plaintiff seeking to enjoin state prosecution must show that retaliation for protected conduct was a substantial motivating factor). In any event, we do not believe that any alteration of Plaintiffs' burden of proof would affect the outcome of this case, and, therefore, do not dwell on the issue
 
 
 [14]
 To make out their claim that they were selectively prosecuted, Plaintiffs must show (1) that they were singled out for prosecution while other similarly situated groups were not for equivalent conduct; and (2) that the discriminatory selection was invidious and based on the exercise of their First Amendment rights. See United States v. Amon, 669 F.2d 1351, 1356 & n. 6 (10th Cir.1981), cert. denied, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982)
 
 
 [15]
 The district court also found that Koby's statements were not defamatory, and, therefore, could not form the basis of a procedural due process claim. Gehl Group, 838 F.Supp. at 1417. Given our holding that Plaintiffs have not shown that they were deprived of a protected liberty interest even if the statement was defamatory, we do not review this aspect of the district court's opinion
 
 
 [16]
 We also conclude that Plaintiffs have not established a claim under 42 U.S.C. Sec. 1985. Plaintiffs have not raised any separate arguments as to Sec. 1985; therefore, given our rulings under Sec. 1983, we need not address any further issues as to Sec. 1985. In any event, Sec. 1985(3) requires a plaintiff to show a defendant's "racial, or perhaps otherwise class-based, invidiously discriminatory animus," Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971), which Plaintiffs here have failed to do