**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 21 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

LISA RANSOM, an individual and
natural mother and next friend for
AMBER RANSOM, a minor child,

      Plaintiffs-Appellants,

v.

WAGONER COUNTY BOARD OF
COUNTY COMMISSIONERS,
a political subdivision of the State
of Oklahoma; LANCE CHISUM,
individually and as an officer and
employee of Wagoner County, State
of Oklahoma; ELMER SHEPHERD,
an officer and employee of Wagoner
County, State of Oklahoma;
WAGONER COUNTY, State of
Oklahoma; RUDY BRIGGS, as an
officer and employee of Wagoner
County,

      Defendants-Appellees,

BRIAN SCOTT GORDON, an
Individual,

      Defendant.

No. 99-5087
(D.C. No. 97-CV-718-E)
(N.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court

          (continued...)

Before **BRORBY** , **PORFILIO** , and **LUCERO** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.   See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Plaintiffs Lisa Ransom and her daughter Amber Ransom filed this action under 42 U.S.C. § 1983 against defendants the Board of County Commissioners of the County of Wagoner, State of Oklahoma (county), Lance Chisum, a Wagoner County Sheriff's Office deputy, Elmer Sheperd, the former Wagoner County Sheriff, and Rudy Briggs, the current Wagoner County Sheriff.  Plaintiffs alleged that defendants violated their constitutional right to freedom of intimate association (familial relations) without due process of law.  In addition, plaintiffs claimed intentional infliction of emotional distress under Oklahoma law, and asserted additional claims against defendant Brian Scott Gordon for assault, battery, and false imprisonment.  With the exception of Mr. Gordon, defendants moved for summary judgment which the district court granted.  Thereafter, the

*(...continued)
generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

district court granted plaintiffs' motion for an order pursuant to Fed. R. Civ. P. 54(b)--despite the remaining unresolved claims against Mr. Gordon--and entered final judgment in favor of all defendants except Mr. Gordon. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm the district court's grant of summary judgment.

Ms. Ransom asserts that on the night of December 2, 1995, she was on a rural Oklahoma highway when Mr. Gordon, Amber's natural father, forced Ms. Ransom's vehicle off the highway with his truck, took then two-year old Amber from Ms. Ransom's vehicle, and drove away with Amber. After the incident, Ms. Ransom went to the Wagoner County Sheriff's Office (Sheriff's Office) to file a report. Mr. Gordon was already there, speaking to Deputy Lance Chisum. [1] According to Ms. Ransom, Deputy Chisum would not let her speak, did not run a criminal history check on Mr. Gordon, and called her a liar. Deputy Chisum ultimately left Amber in Mr. Gordon's custody pursuant to the Sheriff's Office policy and procedure at the time "that a deputy, without some form of Court action or an order from the Court, could not take a child from one person and give it to another without evidence of physical abuse." Appellant's App.

---

[1]    In his deposition, Deputy Chisum stated Mr. Gordon told him that Ms. Ransom had denied him visitation of Amber and he had removed Amber from Ms. Ransom's vehicle and driven to the Sheriff's Office. See Appellant's App. at 210. Deputy Chisum testified that Ms. Ransom did not tell him that Mr. Gordon forced her off the road. See id. at 214-15.

at 125.  Amber remained in Mr. Gordon's custody until January 18, 1996, when, per a state court order, she was returned to Ms. Ransom's custody.  Thereafter, plaintiffs initiated this action.

On summary judgment, the district court found that:  Deputy Chisum was protected by the doctrine of qualified immunity; Deputy Chisum did not intentionally interfere with Ms. Ransom and Amber's constitutional right of familial association; the Sheriff's Office policy was constitutional; and there was no basis for liability on the part of either the Sheriffs or the county.  Plaintiffs raise eight issues on appeal, arguing that:  (1) Deputy Chisum is not shielded by the doctrine of qualified immunity; (2) there is proof of intent by Deputy Chisum to interfere in the relationship between Ms. Ransom and Amber giving rise to a claim of intimate associational rights; (3) the Wagoner County Sheriff's Office policy is unconstitutional; (4) there is a failure to train on the part off the Sheriff's Office; (5) there is a basis for liability on the part of the county; (6) genuine issues of fact exist pertaining to plaintiffs' claims against defendants; (7) the district court erred in granting summary judgment; and (8) the district court erred in failing to distinguish between a natural parent and one who has established parental rights.

We review de novo the district court's decision granting summary judgment and apply the same legal standards as the district court.     See Bullington v. United

Air Lines, Inc. , 186 F.3d 1301, 1313 (10th Cir. 1999). Summary judgment is appropriate on a record demonstrating that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As always, "we view the factual record and inferences therefrom in the light most favorable to the nonmoving party." Bullington , 186 F.3d at 1313.

Once the moving party meets its "initial burden to show that there is an absence of evidence to support the nonmoving party's case," Thomas v. IBM , 48 F.3d 478, 484 (10th Cir. 1995) (quotation omitted ), it is the nonmoving party's burden to "identify specific facts that show the existence of a genuine issue of material fact." Id. "The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." Id. (quotation omitted).

"The doctrine of qualified immunity provides that when government officials are performing discretionary functions, they will not be held liable for their conduct unless their actions violate clearly established statutory or constitutional rights of which a reasonable person would have known." Makin v. Colorado Dep't of Corrections , 183 F.3d 1205, 1209 (10th Cir. 1999) (quotations omitted). Hence, "[i]n analyzing qualified immunity claims, we first ask if a plaintiff has asserted the violation of a constitutional right at all, and then assess

whether that right was clearly established at the time of a defendant's actions." Gehl Group v. Koby, 63 F.3d 1528, 1533 (10th Cir. 1995). It is the plaintiff's heavy burden to establish both these components in order to defeat a qualified immunity claim. See Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995). If there is no constitutional or statutory violation, the court need not inquire if the law was clearly established. See Gehl Group, 63 F.3d at 1533.

Plaintiffs' right to familial association derives from the Fourteenth Amendment's liberty interest. See J.B. v. Washington County, 127 F.3d 919, 927 (10th Cir. 1997). At the time of this incident, it was already "clearly established law that, except in extraordinary circumstances, a parent has a liberty interest in familial association and privacy that cannot be violated without adequate pre-deprivation procedures." Malik v. Arapahoe County Dep't of Social Servs., 191 F.3d 1306, 1315 (10th Cir. 1999); see also Hollingsworth v. Hill, 110 F.3d 733, 739 (10th Cir. 1997). We conclude that Deputy Chisum's actions, as well as the policy pursuant to which he acted, are consonant with, rather than violative of, these principles.

Nevertheless, plaintiffs argue that, although Mr. Gordon is Amber's biological father, he should not be protected by these constitutional principles because he did not undertake any parental responsibilities. In the main, plaintiffs' arguments on appeal hinge on the proposed distinction between a "natural parent"

and a "parent who has established parental rights." Appellant's Br. at 7. For this distinction, plaintiffs rely on Lehr v. Robertson, 463 U.S. 248 (1983), in which the Supreme Court considered whether a biological father who did not sign New York State's putative father registry, and who did not undertake any parental responsibilities, should have been notified of his child's pending adoption proceedings. The Court found no such obligation, stating instead, "the mere existence of a biological link does not merit [the] equivalent constitutional protection" accorded to "an unwed father [who] demonstrates a full commitment to the responsibilities of parenthood by coming forward to participate in the rearing of his child." Id., at 261 (quotation omitted) (explaining when an unwed father acts as a father, such a demonstration garners "his interest in personal contact with his child [ ] substantial protection under the due process clause").

The district court here applied the appropriate analysis, finding no constitutional violation. In doing so, the district court relied on our decision in Hollingsworth, 110 F.3d 733, in which we set forth general principles applying to the doctrine of qualified immunity in the context of a claimed deprivation of familial association. The district court stated:

> Even assuming that plaintiff's right to the care, custody and management of her child was violated, Hollingsworth does not support Plaintiffs' assertion that Deputy Chisum should have known that his conduct violated that right. In Hollingsworth, it is clearly established that the removal of a child from the custody of a parent without notice or a meaningful opportunity to be heard violates the

-7-

constitutional rights of that parent. Deputy Chisum did not remove Plaintiff's child from her custody. Rather, Deputy Chisum left the child in the custody of the natural parent with which she came to the police station. Moreover, Deputy Chisum had to weigh the interest of the admitted natural father of the child, who had her with him when he came to the station.

Appellant's App. at 385.

Based on Mr. Gordon's conceded parental status (Ms. Ransom told Deputy Chisum that Mr. Gordon was Amber's father), Deputy Chisum's decision--to leave Amber in Mr. Gordon's care--was constitutionally reasonable. Nor have plaintiffs raised any material issues of fact that undermine this conclusion and, consequently, Deputy Chisum's actions are shielded by the doctrine of qualified immunity. [2] Given this conclusion, there is no proof of intent on Deputy Chisum's

---

[2] The district court noted earlier in its decision that "neither side seriously argues that there was any evidence to support [ ] a finding" that Amber's safety was under immediate threat (one of the exceptions laid out in Hollingsworth). Appellant's App. at 385; see also Hollingsworth, 110 F.3d at 739. Plaintiffs take issue with this characterization. They contend that the district court failed to consider evidence they submitted in opposition to defendants' summary judgment motion showing that Amber's safety was under immediate threat, based on Mr. Gordon's actions in running Ms. Ransom off the road and grabbing Amber out of Ms. Ransom's vehicle, and based on Mr. Gordon's police record. While troubling, this evidence does not create triable issues of material fact relating to the application of the qualified immunity doctrine to Deputy Chisum's determination that Amber's safety was not in danger. Even if the district court erred in finding no material issues of fact concerning Deputy Chisum's possible knowledge or suspicion of the allegedly assaultive manner in which Mr. Gordon took Amber from Ms. Ransom, this fact fails to establish the unconstitutionality of the Sheriff's Office policy or that Deputy Chisum's failure to follow up on such suspicion was tied to the inadequate training alleged by plaintiffs.

part to deprive Amber and Ms. Ransom of their rights to familial relations.
See Trujillo v. Board of County Comm'rs , 768 F.2d 1186, 1190 (10th Cir. 1985)
(imposing a state of mind requirement for an allegation of intent to interfere with
familial relationship under 42 U.S.C. § 1983).

Nor are we persuaded, based on the plaintiffs' distinction between
a "natural parent" and a "parent who has undertaken parental responsibilities,"
that the Sheriff's Office policy was unconstitutional.  Rather, we agree with the
district court's characterization of the policy--which prevents officers from
supplanting the role of the court to make custody determinations--as "designed to
protect all parties." Appellant's App. at 387.  The greater constitutional danger
lies in taking a child away from a parent without parental consent or court order.
We have held that such governmental conduct is constitutionally defensible only
when a child's safety is in danger.    See J.B., 127 F.3d at 925;  Hollingsworth ,
110 F.3d at 739.  Placing the burden on the Sheriff's Office to disentangle
custody issues is not only untenable but may also be constitutionally suspect.

For this reason, the Sheriffs cannot be held liable on the basis of an
unconstitutional policy.  Plaintiffs, however, also seek to hold the Sheriffs liable
for their purported failure to adequately train or supervise Deputy Chisum.
Supervisors may be individually liable for the constitutional violations of their
subordinates "for failing to adopt or implement policy or training of subordinates

to prevent deprivations of constitutional rights." Sutton v. Utah State Sch. for the Deaf & Blind , 173 F.3d 1226, 1241 (10th Cir. 1999) (citing Meade v. Grubbs , 841 F.2d 1512, 1528 (10th Cir. 1988)). However, because Deputy Chisum's actions were not constitutionally excessive, there is no basis for a finding of liability under this alternate theory. See Hinton v. City of Elwood , 997 F.2d 774, 782 (10th Cir. 1993). For these same reasons, plaintiffs' § 1983 claims against the county, assuming such claims have been properly asserted, also fail. See Monell v. Department of Social Servs. , 436 U.S. 658, 691-92 (1978) (holding that municipal liability for § 1983 claims is limited to deprivation of federally protected rights caused by actions taken pursuant to official municipal policy).

Plaintiffs also allege on appeal that the district court erred in granting summary judgment to the county on their state law claim of intentional infliction of emotional distress. We find plaintiffs' argument is negated by the Oklahoma Governmental Tort Claims Act, which shields the State and its political subdivisions from liability for losses arising from "the failure to provide, or the method of providing, police, law enforcement or fire protection." Okla. Stat. Ann. tit. 51, § 155(6); see also Myers v. Oklahoma County Bd. of County Comm'rs , 151 F.3d 1313, 1320-21 (10th Cir. 1998); Schmidt v. Grady County , 943 P.2d 595, 597-98 (Okla. 1997).

Accordingly, for the foregoing reasons, we affirm.


Entered for the Court


Wade Brorby
Circuit Judge