Verna LEWIS, Plaintiff–Appellee,

v.

CITY OF FT. COLLINS; Barbara Liebler, Defendants,

Larry Estrada, Mayor; Steven Burkett; Richard Shannon; Kelly Ohlson; Barbara Rutstein; Jerry Horak; Ed Stoner; Susan Kirkpatrick, Defendants–Appellants.

No. 89–1083.

United States Court of Appeals, Tenth Circuit.

May 14, 1990.

Susan M. Lach of Frey, Lach & Michaels, P.C., Fort Collins, for plaintiff-appellee.

Kent N. Campbell of Anderson, Sommermeyer, Wich & Dow, Fort Collins, for defendants-appellants.

Before TACHA, and BRORBY, Circuit Judges, and VAN BEBBER, District Judge.*

BRORBY, Circuit Judge.

Appellants appeal the order of the United States District Court for the District of Colorado denying their motion for summary judgment based on qualified immunity.

Plaintiff-appellee Verna Lewis, a former Assistant City Manager of the City of Fort Collins, Colorado (the "City"), brought this action alleging employment discrimination against the City of Fort Collins and against appellants: several present and former City Council members, the present City Manager and the former Acting City Manager. Lewis, an Hispanic female over forty years of age, alleges in her complaint that she was wrongfully demoted from her position as Assistant City Manager and thereafter not considered for other upper level positions in City government on the basis of her age, sex and race in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Equal Opportunity Act of 1972, Title VII, 42 U.S.C. § 2000e, the Civil Rights Act, 42 U.S.C. § 1981, respectively, and that she was deprived of due process and equal protection in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

Lewis began a long career as an employee of the City in 1964 and thereafter served in the capacities of clerk, secretary and city clerk. In 1980, Lewis was named Assistant City Manager, with primary responsibility as liaison between the City Council and the citizens of Fort Collins. In 1985, Lewis was reassigned within the City Manager's office and given duties related to intergovernmental relations and lobbying efforts. In August 1986, four months after defendant Steven Burkett assumed the position of City Manager, Lewis was informed that the position of Assistant City Manager was to be abolished. Accordingly, Lewis was effectively laid off as Assistant City Manager November 1, 1986, and she accepted a transfer to the position of Health and Safety Manager.

In her complaint, Lewis alleges that between April and August 1986 appellants met "to discuss the creation and implementation of a policy ... to remove older, more

---

\* The Honorable G. Thomas Van Bebber, United States District Judge for the District of Kansas, sitting by designation.

senior employees from within the City Manager's office and other high level positions within the city government and replace those employees with younger male caucasian individuals." Lewis further alleges that she was demoted from her position and then not considered for other vacant high-level positions within City government in furtherance of this "policy."

Appellants filed a motion for summary judgment based on qualified immunity before the commencement of discovery. The district court heard the parties' arguments and denied appellants' motion in a ruling from the bench on March 2, 1989:

> Well, the Court's of the view that there are sufficient indications in this record of disputes of material facts, and sufficient questions of how those facts affect the qualified immunity defense as well as other defenses, so that it would be error at this point in the case to grant summary judgment.
>
> Furthermore, it seems too early to grant summary judgment because there hasn't been adequate opportunity for discovery to even establish what the facts are and put people under oath and see what they say under oath subject to the 10–year penalty for perjury, is what they have said on affidavits prepared by somebody else for them.
>
> So the motion for summary judgment of the city is denied.
>
> Similarly, the government official, defendants' motion for summary judgment based on qualified immunity, is denied, but without prejudice to renew. The existent fact, it's clear that there are no real disputes as to the facts, it appears to me on the face of it there are likely to be disputes and there are disputes as to material facts.

Appellants thereafter filed this appeal asserting that the district court improperly ordered discovery and that the district court erroneously determined that issues of material fact exist relative to appellants' entitlement to qualified immunity. We agree with appellants and reverse.

## I. JURISDICTION

■ At the threshold, we must address whether the district court's denial, without prejudice to renew, of appellants' motion for summary judgment based on qualified immunity constitutes an appealable decision under 28 U.S.C. § 1291.

This court has previously determined that appellate jurisdiction is invoked when a defendant asserting qualified immunity is faced with discovery that "exceed[s] that 'narrowly tailored' to the question of qualified immunity." *Maxey v. Fulton*, 890 F.2d 279, 283 (10th Cir.1989). As the Supreme Court explained in *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the doctrine of qualified immunity not only protects government officials from the costs associated with trial, but also from "the other burdens of litigation," which include " 'the burdens of broad reaching discovery.' " 472 U.S. at 526, 105 S.Ct. at 2815 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Qualified immunity is not a shield from *all* discovery. *Maxey*, 890 F.2d at 282. In some cases, discovery may be necessary to determine whether the defendants' challenged conduct violated clearly established law and thus, whether defendants are entitled to qualified immunity. However, until the threshold immunity question is determined, discovery shall be limited to resolving that issue alone. *Id.* at 283; *Harlow v. Fitzgerald*, 457 U.S. at 818, 102 S.Ct. at 2738.

Based on the record before us, the order of the district court does not limit discovery to the resolution of the qualified immunity issue. As such, defendants have been denied their entitlement to be free from the burden of overbroad discovery. Accordingly, we have jurisdiction over this appeal.

## II. ANALYSIS

### A. *Objective Reasonableness*

■ Government officials performing discretionary functions are entitled to qualified immunity insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. at 818, 102 S.Ct. at 2738. *Harlow* crafted this "objective reasonableness" standard for determining the availability of the qualified immunity defense in order to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Id.* However in some cases, the determination of the "objective" reasonableness of an official's conduct rests on establishing whether the defendant acted with an impermissible motive or intent—a highly "subjective" factual element. Such is the case here. For Lewis to succeed with any of her statutory claims of age, race and sex discrimination and with her constitutional equal protection claim brought under § 1983, she must ultimately prove the essential element of intentional discrimination.[1] Absent a discriminatory motive or intent, appellants' challenged conduct would not violate clearly established law.

■ Where a defendant's subjective intent is an element of plaintiff's claim and the defendant moves for summary judgment based on qualified immunity, the defendant must make a prima facie showing of the "objective reasonableness" of the challenged conduct. *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir.1988); *Martin v. D.C. Metropolitan Police Dept.*, 812 F.2d 1425, 1434 (D.C.Cir.1987). In this regard, we have emphasized that the moving party has no burden to *disprove* any unsupported claims of his opponent, especially where, as here, " 'the reasons for swiftly terminating insubstantial lawsuits are particularly strong.' " *Losavio*, 847 F.2d at 649 (quoting *Martin*, 812 F.2d at 1434).

■ In support of their motion for summary judgment, defendants have submitted affidavits and attachments for the purpose of establishing the objective reasonableness of the decision to eliminate Ms. Lewis' former position of Assistant City Manager. Again, in light of the statutory and constitutional discrimination claims asserted, appellants' challenged course of conduct would be objectively reasonable if it was carried out for non-discriminatory purposes. The affidavit of City Manager Steven Burkett states that the City reorganized its staff and eliminated Ms. Lewis' position because the City faced a budget crisis in 1986. Burkett's affidavit sets forth the following description of the reorganization process and the decisions driving the changes made:

Upon my arrival as city manager in April, 1986, I was made aware that the city faced a severe financial crisis due to expenditures exceeding revenues, and a corresponding reduction in general fund reserves.

Further study by city financial staffers revealed that, due to accounting discrepancies, the projected shortfall in revenues was not as large as initially projected, however, it was recognized and brought to my attention that the city had incurred additional expenditures, particularly long-term expenditures, that were initially not taken in consideration in the projected budgets, including approximately $400,000.00 annual bond financing for the next several years to retire the debt on the city's golf course and approximately $300,000.00 annual debt

---

1. To prove intentional discrimination under the ADEA, the plaintiff must show that age was a "determinative factor" in the defendant employer's action toward the plaintiff. *Lucas v. Dover Corp., Norris Div.*, 857 F.2d 1397, 1400 (10th Cir.1988); *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1547 (10th Cir.1988). "Proof of discriminatory motive is critical" to prevailing in a disparate treatment action brought under § 703(a) of Title VII, 42 U.S.C. § 2000e–2(a). *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977); *Bauer v. Bailar*, 647 F.2d 1037, 1044 (10th Cir.1981). A § 1981 claim always requires purposeful discrimination. *General Bldg. Contractors Assoc. v. Pennsylvania*, 458 U.S. 375, 386–88, 102 S.Ct. 3141, 3147–49, 73 L.Ed.2d 835 (1982). Finally, the requirements for establishing a § 1983 claim are the same as those for establishing the underlying constitutional or statutory violations, *Baker v. McCollan*, 443 U.S. 137, 140, 144 n. 3, 99 S.Ct. 2689, 2692, 2694 n. 3, 61 L.Ed.2d 433 (1979), and purposeful discrimination is an essential element of an equal protection violation. *Batson v. Kentucky*, 476 U.S. 79, 93, 106 S.Ct. 1712, 1721, 90 L.Ed.2d 69 (1986).

reduction in connection with the Downtown Development Authority. The projected additional long-term debts essentially canceled the additional revenues.

In view of these projected losses, I implemented, at the direction of City Council, a plan to reduce expenditures and balance the budget which included, among other steps, a reorganization of the city's organizational structure; the effect of this reorganization was to consolidate departments of city government to reduce the span of control of the city manager and to put related functions together to promote efficiencies and cooperative effort. The reorganization was also necessary to reduce the number of department heads reporting to the city manager and otherwise streamline and make more efficient the operation of city government by eliminating unnecessary positions. In addition to implementing the reorganization, the city (a) refinanced $30 million in debt; (b) initiated an early retirement program; (c) transferred street lighting from the general fund to the light and power fund; and (d) ordered all city departments to reduce their 1986 budgets by five percent and their 1987 budgets by an additional five percent.

As documentary support, the attachments to Mr. Burkett's affidavit include the City's organizational charts both before and after the reorganization and a list of the ten employees laid off during the reorganization. Of these ten employees, five were male, eight were Caucasian and four were under the age of 40.

Burkett's affidavit also asserts that, prior to instituting the layoffs, Burkett met with all city department heads to determine the job classifications "which least affected the direct provision of service to the citizens of Fort Collins in an effort to target those positions which would be subject to elimination." The occurrence and purpose of these meetings is supported by various affidavits of other defendants and other affiants. As a result of the meetings, Burkett "concluded that the role of assistant city manager was somewhat undefined

and that its elimination would not unacceptably detrimentally impact upon the direct provision of service to the citizens, and accordingly decided that the position should be eliminated."

To demonstrate the City's financial condition as of March 1986, defendants also present the affidavit of Alan Krcmarik, the present Director of Finance for the City, and the Director of Budget and Research for the City in February 1986. In his former position, Krcmarik was in charge of preparing budgets for the City and doing research and analysis of the City's financial situation. Krcmarik's affidavit tends to support Burkett's description of the City's need to reduce costs. His affidavit and the attachments thereto assert that in the Spring of 1986, the City "faced serious long-term budget problems." For the year 1985, Krcmarik's figures showed a deficit of approximately $600,000 in the City's general fund, and as of March 1986, projected deficits in the general fund of approximately $1.5 million for 1986, $2.9 million for 1987 and $2.5 million in 1988.

Ms. Lewis, through her affidavit and attachments, has attempted to rebut appellants' above proffered justifications for the elimination of her position. As to whether the City faced a budget crisis in 1986, Ms. Lewis presents newspaper clippings from 1988 showing that the City had received income in 1988 from "unexpected" sources. This evidence simply is not relevant to the question of whether the City officials believed the City to be facing a budgetary crisis in Spring 1986. The projections of the City in 1986 may have been inaccurate for failing to foresee a revenue windfall in 1988, but the appellants have demonstrated that the figures relied upon in Spring 1986 projected substantial deficits for the general fund over the next three years. Ms. Lewis has produced nothing to rebut this contention. Additionally, she has produced no evidence to rebut the contention of appellants that the functions of her former position made that position a prime candidate for elimination during the reorganization.

Appellants have also submitted affidavits with attachments for the purpose of showing the objective reasonableness of their actions in not appointing Ms. Lewis to other top-level positions after her demotion. Mr. Burkett asserts that because of Ms. Lewis' long history of service to the City, he attempted to find some other satisfactory employment for her within City government. In the letter Burkett sent to advise Lewis of her layoff, he also offered her the position of Health and Safety Manager, a position that she accepted and currently performs. Burkett maintains that he personally considered Lewis for many of the higher-level openings mentioned in Lewis' complaint. To that end, Burkett spoke to then Mayor and City Councilman Kelly Ohlson and council members Gerald Horak, Lawrence Estrada, Ed Stoner and Barbara Rutstein, and other various members of city staff and department heads concerning Lewis' qualifications. As a result of his discussions, Burkett concluded:

I was made aware that although Ms. Lewis had performed satisfactorily as a clerk, then secretary and later as city clerk, she was perceived as not having performed very well as council liaison and as assistant city manager, due to a perceived attitude problem and weakness in communications and interpersonal skills in dealing with City Council and city staff. In particular, I was told that Ms. Lewis had a tendency to "talk down" to or "tell off" City Council members if they asked what appeared to Ms. Lewis to be too many questions or expressed views not consistent with her own and that the quality of her work did not meet expected standards.

As a further result of this investigation, I was informed that Ms. Lewis lacked credibility with department heads and City Council members.

. . . .

Based upon the information available to me through my numerous conversations. . . . I decided that Ms. Lewis' qualifications and weaknesses were not appropriate for the positions of Director of Administrative Services, Director of

Utility Services and Deputy City Manager.

It was on this basis and none other that I decided not to extend an offer to Ms. Lewis to fill any of those positions requiring extensive interpersonal dealings, supervision of staff, and, in the case of Deputy City Manager, extensive interaction with City Council.

The content of Burkett's discussions with the former mayor and city council members is corroborated by the affidavits of all the persons named by Burkett. Former Mayor Kelly Ohlson's affidavit states that he "found [Lewis'] work performance to be inadequate" when Lewis served as council liaison:

The position of council liaison was a key position and constituted the main point of public contact between the city council and the citizens of Fort Collins. Ms. Lewis' job involved handling inquiries and complaints from the citizens and preparing responses on behalf of city council and the mayor. Her responses were often incomplete, inaccurate, grammatically incorrect, and even at times insensitive to citizen concerns. Ms. Lewis often seemed "put-out" that some requests had been made of her by city council.

. . . .

I was also not pleased with Ms. Lewis' performance as a lobbyist in handling intergovernmental relations when she was transferred from the position of council liaison to one of responsibility for intergovernmental relations and lobbying efforts.

The affidavits of Rutstein and Horak strike a similar chord of dissatisfaction with regard to the quality of Lewis' performance in the positions of council liaison and Assistant City Manager. Additionally, the affidavits of Estrada and Stoner state that, although they did not take negative positions regarding Lewis' work when approached by Burkett, they were aware that other council members were dissatisfied with her job performance.

Again, Lewis' affidavit attempts to rebut appellants' showing. Specifically, she contests appellants' position that her previous

work in high-level positions (as Assistant City Manager and council liaison) was unsatisfactory. In this regard, Lewis' affidavit and the attachments thereto fall short of the mark. For example, Ms. Lewis provides volumes of documentation relating to various performance evaluations and pay raises throughout her career. However, most of the favorable evaluations relate to periods *before* Lewis rose to the Assistant City Manager position.

Based on all the foregoing, we conclude that appellants have made a prima facie showing of the objective reasonableness of their challenged actions and have produced enough evidence to require plaintiff to demonstrate that summary judgment based on qualified immunity is inappropriate.

### B. Additional Discovery

■ Once a showing of objective reasonableness is produced, "the plaintiff may avoid summary judgment only by pointing to specific evidence that the official's actions were improperly motivated," *Losavio*, 847 F.2d at 649, thereby establishing the existence of a genuine issue of fact for trial. *See also, Polenz v. Parrott*, 883 F.2d 551, 554 (7th Cir.1989) ("at the summary judgment or directed verdict stage ... the court must determine whether the plaintiff has factually supported the allegations as to the state of mind element.") In the alternative, a district court may defer a ruling on summary judgment pending additional discovery when the affidavits of the party opposing the motion indicate that "the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Fed.R.Civ.P. 56(f).

■ Accordingly, we must first decide whether the district court correctly concluded that it was "too early to grant summary judgment because there hasn't been adequate opportunity for discovery." A district court has discretion to determine whether to allow additional discovery following the filing of a Rule 56(f) affidavit and the Rule 56(f) affidavit "should be treated liberally unless dilatory or lacking in merit." *Patty Precision v. Brown &*

*Sharpe Mfg. Co.*, 742 F.2d 1260, 1264 (10th Cir.1984). However, the district court's discretion is not without bounds, particularly when the summary judgment motion is grounded on a claim of qualified immunity:

> Rule 56(f) discretion must be limited when a summary judgment motion is based on qualified immunity because insubstantial lawsuits 'against government officials [should] be resolved *prior to discovery and on summary judgment* if possible.' *Anderson v. Creighton*, 483 U.S. 635, 640 n. 2 [107 S.Ct. 3034, 3039 n. 2, 97 L.Ed.2d 523] (1987) (emphasis added); .... Liberal application of rule 56(f) should not be allowed to subvert the goals of *Harlow* and its progeny.

*Jones v. City and County of Denver, Colo.*, 854 F.2d 1206, 1211 (10th Cir.1988). Accordingly, in response to a summary judgment motion based on qualified immunity, a plaintiff's 56(f) affidavit must demonstrate "*how* discovery will enable them to rebut a defendant's showing of objective reasonableness" or, stated alternatively, demonstrate a "connection between the information he would seek in discovery and the validity of the [defendant's] qualified immunity assertion." *Id.* (emphasis added). To that end, it is insufficient for the party opposing the motion to merely assert that additional discovery is required to demonstrate a factual dispute or "that evidence supporting a party's allegation is in the opposing party's hands." *Id.; Patty Precision*, 742 F.2d at 1264.

■ Plaintiff here has failed in her brief or affidavits in response to defendants motion for summary judgment to demonstrate how discovery will raise a genuine fact issue as to appellants' qualified immunity claim. In her brief in response to the motion for summary judgment, plaintiff asserts that there has been "insufficient time for discovery" and that "[t]he parties have not begun the discovery process." Thus, plaintiff argued that appellants' motion for summary judgment was "premature" and "improper." Within the affidavit itself, plaintiff repeatedly asserts that she "will be able to show" certain facts relative to her claims of discriminatory animus on the

part of City officials. These inspecific references are simply insufficient to meet Rule 56(f) muster when defendants' claim of qualified immunity is at issue. Plaintiff has not attempted to particularize her request for discovery. She has not explained how any specific documents or depositions will aid in rebutting defendants' showing of objective reasonableness. Rule 56(f) is not a license for a fishing expedition, especially when summary judgment is urged based on a claim of qualified immunity. Accordingly, we hold that the district court abused its discretion in deferring a final ruling on defendants qualified immunity claim pending discovery.

## C. Summary Judgment

As we stated earlier, once a showing of objective reasonableness has been made and further discovery is denied, plaintiff may avoid summary judgment only by producing specific evidence that appellants' actions were tainted by a discriminatory motive. *Losavio*, 847 F.2d at 649. In reviewing a summary judgment determination, we apply the same standard employed by the trial court under Fed.R.Civ.P. 56(c).[2] *Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988). When a properly supported motion for summary judgment is made, the party opposing the motion "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In response to defendants' showing of objective reasonableness, Ms. Lewis has produced an affidavit with a great number of attachments. However, despite the volume of information produced, Ms. Lewis has failed to produce any specific evidence of a discriminatory motive on the part of appellants in eliminating her former position or in not appointing her to other high-level positions. The affidavit's statements regarding discrimination can only be characterized as conclusory allegations. Repeating the allegations of the complaint, Ms. Lewis asserts that:

> Mr. Burkett was hired by the City Council ... because of his reputation as a manager who gets rid of older, more senior employees from within the city government, thereby saving money. He then replaces those employees with younger, male caucasian individuals who are compatible with his philosophical concepts and the concepts of the City Council.... I was involved in many discussions, both formally and informally, about this philosophy.

> The City Council members named as defendants in this matter all agreed with that philosophy and were the decision makers in hiring Mr. Burkett and giving him the full power and authority to implement a clearly discriminatory policy, in cooperation with Defendant Richard Shannon, acting City Manager.

Lewis does not direct the court to any specific evidence to support these allegations. The *only* evidence relevant to Lewis' claims of discrimination is the circumstantial fact that many of the available higher-level positions were eventually filled by white males under the age of forty. (At least two high level positions were eventually filled by a Black female and a Caucasian female.) However, the burden placed upon the nonmoving party at the summary judgment stage to demonstrate a *genuine* issue of fact goes beyond the burden of producing "some evidence." A reasonable jury could not find discriminatory purpose based on this evidence alone.

Accordingly, we hold that plaintiff has failed to produce specific evidence of discriminatory purpose on the part of appel-

---

2. Rule 56(c) reads, in pertinent part:
    The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

lants sufficient to survive summary judgment. We therefore REVERSE the determination of the district court and grant appellants' summary judgment motion based on qualified immunity as to all of plaintiff's statutory discrimination claims and as to her § 1983 equal protection claim.

Plaintiff has also alleged a due process violation in the complaint. Although the contours of plaintiff's due process claim are not readily apparent to this court, we find no indication in the record that appellants have moved to dismiss this claim and find no mention of the due process claim in appellants' motion for summary judgment based on qualified immunity. Accordingly, we take no action relative to the due process claim and REMAND for further proceedings related thereto.