**John F. HOUCK, Jr., Plaintiff,**

v.

**CITY OF PRAIRIE VILLAGE, KANSAS and Charles F. Grover and Barbara Vernon, Defendants.**

No. 95–4066–RDR.

United States District Court, D. Kansas.

Jan. 16, 1996.

Harold S. Youngentob, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for John F. Houck, Jr.

Patricia A. Bennett, Bennett, Lytle, Wetzler, Martin & Pishny, L.C., Prairie Village, KS, Steven D. Steinhilber, Thaddeus J. McDonald, III, Sherman, Taff & Bangert, P.C., Kansas City, MO, for City of Prairie Village, Kansas.

Patricia A. Bennett, Bennett, Lytle, Wetzler, Martin & Pishny, L.C., Prairie Village, KS, David W. Hauber, Boddington & Brown, Chtd., Kansas City, KS, for Charles F. Grover, Barbara Vernon.

## MEMORANDUM AND ORDER

ROGERS, Senior District Judge.

This case arises from actions surrounding the arrest of plaintiff and his termination from employment as a police officer with the City of Prairie Village. Plaintiff has filed a complaint asking for relief under: the Civil Rights Act of 1991; Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 1983; the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.; the Kansas Act Against Discrimination, K.S.A. 44–1001 et seq.; and Kansas common law for breach of implied contract and outrage. Plaintiff also alleges violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., although this statute is mentioned only in the text of the complaint, not in the headings of the counts or in the opening paragraphs of the complaint which describe the "nature of the case."

This case is now before the court upon defendants Charles Grover's and Barbara Vernon's motion to dismiss and for summary judgment. In response to the instant motion, plaintiff has conceded the dismissal with prejudice of Barbara Vernon. Accordingly, the court shall focus upon the claims against defendant Charles Grover.[1]

*Allegations in verified complaint and uncontroverted facts*

Plaintiff was hired as a police officer by the City of Prairie Village, Kansas on August 22, 1988. Defendant Charles Grover is the chief of police for the City of Prairie Village. Defendant Grover has been the chief of police since March 1991. Plaintiff has a history of acute depression, which led to his discharge from the United States Marine Corps before he was hired by Prairie Village. The city was aware of plaintiff's medical history when plaintiff was hired. The city was also aware that plaintiff had made several attempts at suicide and that he was under the care of a psychiatrist.

On February 5, 1994, a Saturday, plaintiff and his wife, Sherry, were arguing at their home. Plaintiff had been drinking. Plaintiff told his wife to leave. Then, in an upstairs bedroom, he placed his service revolver to his chin and pulled the trigger. Plaintiff flinched, so the bullet did not strike him. Sherry Houck called 911 for an ambulance. Police officers were dispatched to the scene.

Plaintiff was arrested and charged with domestic battery and battery on a law enforcement officer. The domestic battery charge arose from the fight plaintiff had with his wife, prior to the suicide attempt. Plaintiff allegedly struck his wife in the back, causing red marks. The battery on a law enforcement officer charge arose from allegations that plaintiff pushed an officer off the porch of plaintiff's home. Plaintiff alleges the arrest was improper. He asserts that other persons suffering mental illness who have threatened suicide and discharged weapons have not been charged with a crime,

---

1. A motion to amend and supplement defendants' motion has been filed. Doc. No. 14. There is no objection to the motion to amend. It shall be granted.

but instead have been taken to a hospital for evaluation. Plaintiff claims this is standard operating procedure which was not followed in his case. Defendant asserts that the discretion to hospitalize someone is only exercised when that person has not committed a crime against another person.

Plaintiff was held at the Johnson County Adult Detention Facility under suicide watch until February 7, 1994, a Monday, when he was released on bond and transferred to a psychiatric hospital. Plaintiff also claims he was improperly incarcerated at the detention facility and denied prompt medical attention.

The criminal charges were eventually resolved through a diversion agreement. In the agreement plaintiff acknowledged that the Johnson County District Attorney's Office believed he was guilty of the crimes charged.

Plaintiff was placed on administrative leave status pending investigation by virtue of a memo dated February 7, 1994. On February 23, 1994, defendant Grover received an internal affairs report, which included statements from plaintiff and his wife. The report concluded that plaintiff committed battery upon his wife and upon a law enforcement officer and that he violated police regulations. It was recommended that plaintiff be terminated. A noninvestigating officer concurred in the recommendation two days later. Plaintiff's status was then changed to regular duty and attempts were made to schedule a disciplinary hearing. Plaintiff was informed that he should contact defendant Grover when he was released from inpatient care.

Plaintiff was released from the hospital on February 28, 1994. On March 9, 1994, defendant Grover wrote plaintiff that a disciplinary hearing date was set for March 14, 1994 and that if he could not be present for medical reasons his doctor should contact Grover. Plaintiff's doctor, Dr. L'Ecuyer, wrote defendant Grover that plaintiff was unable to participate in the hearing for medical reasons and that the hearing should be postponed for four to six weeks. In a later letter, solicited by defendant Grover, Dr. L'Ecuyer stated that plaintiff had been under care for major depression of the bipolar type in which he had had irritable manic episodes. The doctor further indicated that

medication and shock therapy had been used. Finally, the doctor stated that plaintiff's physicians were trying to find a medication which prevented the manic periods and would allow plaintiff to maintain an even keel and return to normal functioning. Defendant Grover responded by thanking the doctor for the information and asking when plaintiff could participate in "personnel-type meetings."

The police department made further inquiry regarding plaintiff's condition on April 21, 1994. A Dr. Kisker informed the department that plaintiff "may be able to attend" a hearing in two to four weeks. On June 1, 1994, Lt. Gary Pruitt of the police department wrote plaintiff to ask if he could return to the department for an administrative hearing.

On September 27, 1994, defendant Grover wrote plaintiff to inform him that a disciplinary hearing was scheduled for October 12, 1994. The letter stated that the purpose of the hearing was to provide plaintiff with the opportunity to be heard in an effort to establish the facts of the February 5, 1994 incident. The letter also expressed a willingness to consider a request for representation at the hearing.

Apparently, plaintiff and defendant Grover spoke on the telephone around the date of the proposed hearing. Plaintiff followed up the conversation with a letter which stated:

After our conversation Tuesday, 10/12/94, I believe that it would be in my best interest to waive my right to appear at the disciplinary hearing.

Because of my illness on the date of occurrence and the resultant memory loss caused by the illness and resulting treatments, I feel that I cannot add anything more to what has already been reported. I do not think that an advocate could argue accurately on my behalf.

I do believe that the supervisor on the scene did not consider the possibility of encountering a mentally ill subject, thereby denying me to immediate medical attention. I would ask you to consider the effect that my illness had on the events of 02/05/94 and my previous work record with the department.

On October 24, 1994, defendant Grover wrote plaintiff acknowledging plaintiff's letter waiving his appearance at a hearing. Grover's letter further indicated he told plaintiff the hearing would give plaintiff the opportunity to present evidence and arguments. Since plaintiff waived the hearing, defendant Grover stated that he would review the file and take into account the facts, findings and recommendations expressed by staff members.

On November 4, 1994, defendant Grover wrote plaintiff to inform him that Grover believed a preponderance of the evidence supported the findings that he committed domestic battery, battery on a law enforcement officer, and violations of the police code of conduct. The letter further informed plaintiff that a pretermination hearing was scheduled for November 18, 1994. There, plaintiff would have the opportunity to explain any extenuating circumstances with regard to determining an appropriate sanction for the above-mentioned violations.

On November 14, 1994 plaintiff wrote a letter to defendant Grover, which said:

I understand that the case against me, based solely on the reports submitted, seems black and white. However, as you already know, neither Sherry or I were interviewed during the final investigation. It is possible that we can present a different viewpoint on the incident.

Once again I would like to ask you to consider my illness and how it affected the incident. This was not a normal case of spousal abuse. It occurred during the mania stage of my illness; a time of which I was suicidal and interested in only that. I did not try to harm anyone, including Officer Thomas.

I also ask that you consider my prior record.

On November 29, 1994, defendant Grover wrote plaintiff and stated that after reviewing the relevant files, plaintiff's past record and facts brought to light in plaintiff's letter, he had concluded that plaintiff's employment should be terminated.

Plaintiff asserts that, under city policy and procedures, he should have been placed on disability status until he was competent for other duties, instead of being forced into a disciplinary hearing. Plaintiff further alleges that his disability was not considered when the disciplinary action was taken.

Plaintiff had the opportunity to appeal his discharge to the Civil Service Commission of Prairie Village and then to the Mayor of Prairie Village. He did not do so.

*Standard of review*

The general guidelines for analyzing summary judgment motions were reviewed by the Tenth Circuit in *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993):

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 91 L.Ed.2d 202, 106 S.Ct. 2505, 2509 (1986); *Russillo v. Scarborough,* 935 F.2d 1167, 1170 (10th Cir.1991). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 91 L.Ed.2d 265, 106 S.Ct. 2548, 2553 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 89 L.Ed.2d 538, 106 S.Ct. 1348, 1355–56 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Applied Genetics Int'l v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990).

The standard for dismissal on a Federal Rule of Civil Procedure 12(b)(6) motion is well-established: "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The court must accept as true all well-pleaded allegations and must draw all reasonable inferences in favor of the plaintiff. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977); *Mortensen v. First Federal Savings & Loan Association*, 549 F.2d 884, 891 (3d Cir.1977).

*Outrage*

■ The first argument in defendants' motion asks the court to dismiss plaintiff's claim of outrage. There are two threshold requirements for the trial court's determination when a claim of outrage is asserted: "(1) whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery and (2) whether the emotional distress suffered by the plaintiff is of such extreme degree the law must intervene because no reasonable person should be expected to endure it." *Fusaro v. First Family Mortgage Corporation, Inc.*, 257 Kan. 794, 897 P.2d 123, 131 (1995).

■ "[F]or conduct to be deemed sufficient to support the tort of outrage, it must be so outrageous in character and so extreme in degree as to go beyond the bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* "The classic test is that liability may be found to exist when the recitation of the facts to an average citizen would arouse resentment against the actor and lead that citizen to spontaneously exclaim, 'Outrageous!'" *Id.*

The Tenth Circuit has noted that "Kansas courts are reluctant to extend the outrage cause of action to discrimination and harassment claims." *Bolden v. PRC, Inc.*, 43 F.3d 545, 554 (10th Cir.1994) *cert. denied*, — U.S. ——, 116 S.Ct. 92, 133 L.Ed.2d 48 (1995). Many cases may be cited to support that conclusion. E.g., *Beam v. Concord Hospitality, Inc.*, 873 F.Supp. 491 (D.Kan.1994); *Moten v. American Linen Supply Co.*, 155 F.R.D. 202 (D.Kan.1994); *Byle v. Anacomp, Inc.*, 854 F.Supp. 738 (D.Kan.1994).

■ The crux of plaintiff's claim appears to be discrimination. Plaintiff asserts that he was discriminated against on the basis of his mental illness because police officers who committed similar acts, but who were not mentally ill, were not charged with crimes, incarcerated, or dismissed from employment. Plaintiff may also claim that he was discriminated against because he was a police officer, since he asserts that civilians who were mentally ill and committed similar acts were taken to a hospital, rather than charged with a crime and incarcerated. If there is a dimension to plaintiff's complaint beyond discrimination, it is plaintiff's claim that defendants rebuffed the efforts of plaintiff's wife and others to have plaintiff released for treatment or given prompt treatment. As a result, plaintiff was not treated for the acute problems he suffered from approximately 4:00 p.m. on Saturday, February 5, 1994 until he was released on bond and taken to a hospital on Monday, February 7, 1994.

What may distinguish this case from the "normal" employment discrimination action, in the court's opinion, is the absence of medical treatment claim. The failure to provide medical treatment has been considered sufficient to state a claim of outrage in some contexts. See *Howe v. Hull*, 874 F.Supp. 779, 790 (N.D.Ohio 1994) (refusal to provide treatment to patient suspected of having HIV virus); *Woolfolk v. Duncan*, 872 F.Supp. 1381, 1391 (E.D.Pa.1995) (same); *Miller v. Spicer*, 822 F.Supp. 158, 168–69 (D.Del.1993) (same); *Hoffman v. Memorial Osteopathic Hospital*, 342 Pa.Super. 375, 492 A.2d 1382 (1985) (failure to provide treatment at hospital emergency room). We also note that the denial of medical care that results in unnecessary suffering in prison has been considered inconsistent with standards of *decency* and therefore actionable under § 1983 as a violation of the Constitution. E.g., *White v. Farrier*, 849 F.2d 322, 325–26 (8th Cir.1988) (recognizing transsexualism as a serious medical need to which prison officers may be indifferent).

We believe plaintiff's allegations are sufficient to state a claim of outrage. Furthermore, the summary judgment record is not well-developed on this issue. The court may reach a different conclusion upon a more complete record. But at this stage, we shall

not grant the instant summary judgment motion against the outrage claim.

*Section 1983*

Plaintiff's § 1983 claim is based on his arrest, the denial of medical treatment, and his discharge from employment. Plaintiff does not detail whether he claims the denial of medical treatment violated his due process or equal protection rights. Although the most specific allegations are set forth in Count One against the City of Prairie Village (which has not brought the instant motion for summary judgment), Count Three against defendant Grover incorporates the same allegations.

██ *Preclusion by Title VII.* Defendant Grover makes several arguments against plaintiff's § 1983 claim. First, he argues that any claim under § 1983 is preempted by Title VII of the Civil Rights Act of 1964. However, Title VII does not provide a right against discrimination on the basis of disability. 42 U.S.C. § 2000e–2(a) (defining employment discrimination because of "race, color, religion, sex, or national origin" as an "unlawful employment practice"). The ADA has incorporated by reference certain powers, remedies and procedures of Title VII. 42 U.S.C. § 12117 (incorporating 42 U.S.C. §§ 2000e–4, 2000e–5, 2000e–6, 2000e–8 and 2000e–9). But, Title VII does not prohibit the discrimination alleged in this case. Nor has this been changed by the 1991 Civil Rights Act, which expands the relief available under the ADA (see 42 U.S.C. § 1981a(a)(2)), but does not redefine the employment discrimination made illegal under Title VII to include discrimination on the basis of disability.

██ Consequently, the court has no grounds for finding that Congress intended Title VII to preclude a right of action under § 1983 for the discrimination alleged by plaintiff in this case. At the same time, the court has no grounds for sustaining an action under Title VII, as alleged by plaintiff in Counts I and V of his complaint. We acknowledge that plaintiff alleges illegal retaliation in Count V of the complaint. However, Title VII only prohibits retaliation for opposing "any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a). Discrimination against disabled persons is not an unlawful employment practice under § 2000e. Therefore, Title VII does not provide a remedy against retaliation for opposing such discrimination.

Such retaliation is unlawful under the ADA. 42 U.S.C. § 12203(a). But, this statute has not been expressly alleged by plaintiff in Count Five of the complaint, which charges unlawful retaliation. Plaintiff may wish to clarify this point.

██ *Respondeat superior.* Defendant Grover also contends that there is no liability through the operation of respondeat superior under § 1983. This is correct. E.g., *Langley v. Adams County,* 987 F.2d 1473, 1481 (10th Cir.1993). "A supervisor is not liable under § 1983 unless an 'affirmative link' exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Butler v. City of Norman,* 992 F.2d 1053, 1055 (10th Cir.1993) (citing *Meade v. Grubbs,* 841 F.2d 1512, 1527 (10th Cir.1988)). However, plaintiff alleges that defendant Grover was directly involved in the investigation, incarceration and termination of plaintiff. Paragraph 48 of the complaint. Consequently, a motion to dismiss cannot be granted as to defendant Grover.

As for summary judgment, in the instant motion defendants do not directly controvert defendant Grover's direct involvement. Nor do defendants assert that plaintiff cannot prove Grover's direct involvement. Therefore, the court shall not grant summary judgment on the assertion that defendant Grover was not involved in the critical events described in the complaint.

██ *Final authority.* Defendant also contends that he cannot be liable because he was not the final authority upon plaintiff's termination, since plaintiff had the option of appealing his discharge to a higher city authority. Defendant cites *Jantz v. Muci,* 976 F.2d 623 (10th Cir.1992) for this contention. This argument is off the mark.

The issue in *Jantz* was whether a school district could be liable for the personnel recommendations of a principal when the school district retained final authority to review those decisions. The court held that the

principal did not represent the school district for the purpose of the hiring decisions because the school board retained the right to review those decisions. The *Jantz* case said nothing about the liability of the principal, as an individual, for discriminatory actions which affected an employment decision. That is the issue in this case regarding defendant Grover. Since defendant Grover is alleged to have direct involvement in discriminatory actions which ultimately caused plaintiff's discharge, there is a sufficient basis alleged for his liability under § 1983. *Wulf v. City of Wichita*, 883 F.2d 842, 863–64 (10th Cir.1989).

■ *Qualified immunity.* Defendant Grover's next argument in favor of summary judgment is based on qualified immunity. Defendant does not contend that the law against discrimination against disabled persons was unclear during the relevant time period. Instead, defendant asserts that he has established a prima facie showing of the objective reasonableness of his conduct and that plaintiff has failed to rebut this showing with specific evidence of defendant's improper motivation.

■ Obviously, improper motivation is a key element to a § 1983 action alleging a violation of plaintiff's right to equal protection of the laws. This is discussed in *Welsh v. City of Tulsa*, 977 F.2d 1415, 1419–20 (10th Cir.1992), where the Tenth Circuit affirmed summary judgment against a similar equal protection claim under § 1983.

"[T]he requirements for establishing a § 1983 claim are the same as those for establishing the underlying constitutional ... violations, ... and purposeful discrimination is an essential element of an equal protection violation." *Lewis v. City of Fort Collins*, 903 F.2d 752, 755 n. 1 (10th Cir.1990) (citations omitted). " 'Discriminatory purpose,' however, implies more than intent as volition or intent as awareness of consequences." *Personnel Adm'r v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979). Rather, it implies that a decisionmaker "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* (footnote omitted).

The Tenth Circuit also recently recounted the analytical framework applicable to qualified immunity arguments in summary judgment motions against claims involving allegations of improper subjective intent.

In analyzing qualified immunity claims, we first ask if a plaintiff has asserted the violation of a constitutional right at all, and then assess whether that right was clearly established at the time of a defendant's actions. *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Once a public official raises a qualified immunity defense, the plaintiff bears the burden of (1) coming forward with sufficient facts to show that the defendant's conduct violated the law; and (2) demonstrating that the relevant law was clearly established when the alleged violation occurred. *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 646 (10th Cir.1988). Where a plaintiff fails to demonstrate that a defendant's conduct violated the law, we need not reach the issue of whether the law was clearly established. *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir.1993).

.  .  .  .  .

[W]hen the issue [of intent] is presented in the context of the defendant's claim for summary judgment based on qualified immunity, some special rules apply. When state of mind is an essential element of the plaintiff's substantive claim, we have adopted a modified approach to considering a public official's qualified immunity defense on a motion for summary judgment. First, the defendant "must make a prima facie showing of the 'objective reasonableness' of the challenged conduct." *Bruning v. Pixler*, 949 F.2d 352, 356–57 (10th Cir.1991) (quoting *Lewis v. City of Ft. Collins*, 903 F.2d 752, 755 (10th Cir. 1990)), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). If Defendants carry their burden of showing objective reasonableness, the burden then shifts to Plaintiffs to establish that Defendants acted on the basis of a culpable subjective state of mind. Once the defendant has shown his or her objective reasonableness, the plaintiff's burden to establish subjec-

tive motivating animus becomes heightened, requiring specific and concrete evidence rather than mere speculation. *Bruning*, 949 F.2d at 357; *Pueblo Neighborhood Health Ctrs.*, 847 F.2d at 649. *Gehl Group v. Koby*, 63 F.3d 1528, 1533 & 1535 (10th Cir.1995).

To reiterate, defendant has conceded the first part of the qualified immunity analysis. He does not contest that plaintiff has alleged the violation of a clearly established right. However, this right is based upon proof of an improper state of mind.

To establish his claim of qualified immunity, defendant Grover has made a prima facie showing of the objective reasonableness of the challenged conduct. In the diversion agreement plaintiff acknowledged the belief of the district attorney's office in the sufficiency of the evidence behind the charges upon which he was arrested. The conclusions of the police internal affairs report are not contested by plaintiff either. See # 12 of defendants' list of uncontroverted facts. Finally, plaintiff does not dispute that a police officer may be terminated under the police department's regulations for violating the criminal law, whether or not there is a formal conviction.

Plaintiff attempts to satisfy his burden of proving specific and concrete evidence of defendant Grover's discriminatory animus by describing an unwritten policy and by offering alleged analogous instances in which persons were treated differently than plaintiff. Plaintiff asserts in an affidavit that the police department's standard operating procedure of dealing with persons suffering a mental breakdown was to take them to a mental hospital for quick evaluation and treatment. Plaintiff supports this statement with reference to a newspaper article which describes police officers taking a person to a hospital after that person discharged a gun in front of the police officers.

Defendant Grover has admitted in a reply affidavit that there is an unwritten standard operating procedure that allows police officers discretion to take a person to a mental health facility as an alternative to arrest. But, defendant Grover states that this policy applies only when that person has not committed a crime against another person. The battery charges against plaintiff distinguish the instant case from the unwritten standard operating procedure and the instance described in the newspaper, according to defendant Grover. Defendant Grover has also referred to a written policy, effective prior to the incident in question, which requires an arrest on domestic violence calls when there is probable cause to believe a misdemeanor has occurred.

Plaintiff has also cited the alleged disparate treatment of two police officers, Don Brooks and Joe Osorkewitz. However, defendant Grover was not the Chief of Police when the Brooks incident occurred. Nor does plaintiff allege that defendant Grover had any role in handling the Brooks incident. According to an affidavit from defendant Grover, the Osorkewitz incident occurred on September 16, 1992 when, during horseplay at roll call, the officer allegedly drew his gun without discharging it or pointing it at anyone. This was viewed as an ill-advised attempt at humor for which discipline, short of termination, was exercised.

In the court's opinion, plaintiff has failed to provide specific and concrete evidence of discriminatory animus. Consequently, the court shall grant defendant Grover's motion for summary judgment against plaintiff's § 1983 claim of discrimination. The criminal charges which were brought against plaintiff not only supply a legitimate, objectively reasonable, nondiscriminatory reason for arresting plaintiff and terminating his employment, but also distinguish plaintiff's situation from the cases which plaintiff contends are similar.

In fact, the alleged examples of disparate favorable treatment are not similar to this case. They do not involve battery upon another person. They do not involve criminal charges. They do not involve domestic violence and a policy which appears to require an arrest. One instance occurred before defendant Grover was chief of police. Another instance involved horseplay in which discipline, albeit short of termination, was initiated. However, unlike the case at bar, there is no indication that the termination of Mr. Osorkewitz was ever recommended to defendant Grover. Finally, the incident involving

the civilian who discharged a weapon obviously does not involve a police officer.

To the extent that a stricter standard was applied to plaintiff because he was a police officer, instead of a civilian, plaintiff has failed to explain why this would be illegal or to specifically assert in his complaint that it is illegal. Defendant Grover has stated in an affidavit that he acted to maintain public trust in the police department. This is a rational reason for applying a stricter standard to police officers than to civilians.

Finally, the fact that disability leave was a potential option or that plaintiff's disability was not considered a sufficient excuse to warrant a different approach, fails to prove that defendant Grover's actions were motivated by a bias or prejudice against persons suffering mental illness. It merely proves that defendant Grover took an action in spite of plaintiff's disability. That is different from taking an action because of plaintiff's disability. Even assuming that plaintiff's misconduct was intrinsically related to his disability, defendant Grover's response to those actions was rationally related to the city's goal of maintaining public trust in the police department. Accordingly, no violation of the equal protection clause can be demonstrated by plaintiff. See *Welsh,* 977 F.2d at 1420 (rejecting employment as a firefighter to someone who needs special accommodation does not violate the equal protection clause).

In conclusion, there is insufficient evidence proving that defendant Grover made any arrest, treatment or employment decision in order to discriminate against plaintiff because he suffered from depression or because he was a police officer. There is also insufficient evidence rebutting the rational relationship between plaintiff's arrest and discharge and the police department's legitimate interests. Therefore, the court shall grant defendant Grover's summary judgment motion against plaintiff's claim under § 1983 that

defendant Grover discriminated against him on the basis of his disability.[2] The court is not passing judgment upon a constitutional claim under § 1983 of inadequate medical care while plaintiff was incarcerated. However, if plaintiff wishes to proceed with such a claim, he may want to clarify the complaint.

*Due process.* Defendant Grover's final argument is that plaintiff received due process in the handling and method of his termination. Plaintiff does not appear to dispute this point. Indeed, it is doubtful that plaintiff was making this claim in his complaint. Therefore, the court shall dismiss any claim that plaintiff was not afforded procedural due process when his employment was terminated.

■■■ *Rule 56(f).* As an alternative to granting defendant's motion, plaintiff has asked for additional time under FED. R.CIV.P. 56(f) to conduct discovery. The purpose of the proposed discovery is to: propound interrogatories with respect to "defendant Grover's efforts to conform with EEOC Guidelines requiring a fair and impartial method to investigate claims of discrimination based on disability"; conduct discovery "into the efforts of Mr. Grover to properly train and supervise personnel so as to protect against discrimination of employees suffering from a disability."; comparisons to disciplinary actions against "other uniformed police officers exhibiting similar behavior"; and discovery as to "training and internal discipline." Attachment H to plaintiff's response to defendants' summary judgment motion.

The Tenth Circuit addressed this court's discretion in considering a Rule 56(f) affidavit in *Lewis v. City of Ft. Collins,* 903 F.2d 752, 758 (10th Cir.1990):

A district court has discretion to determine whether to allow additional discovery following the filing of a Rule 56(f) affidavit and the Rule 56(f) affidavit "should be

---

**2.** If this case were viewed as an employment discrimination action under § 1983 in which defendant Grover had supplied a nondiscriminatory reason for the termination decision, the court would hold that plaintiff had failed to offer evidence creating a jury issue as to whether the nondiscriminatory reason was pretextual and that plaintiff had also failed to provide any direct

evidence of discrimination on the basis of disability. This analysis appears similar to the above-described qualified immunity analysis. It would also warrant summary judgment for defendant Grover on the termination from employment issue. See *Randle v. City of Aurora,* 69 F.3d 441, 451–53 (10th Cir.1995).

treated liberally unless dilatory or lacking in merit." *Patty Precision v. Brown & Sharpe Mfg. Co.,* 742 F.2d 1260, 1264 (10th Cir.1984). However, the district court's discretion is not without bounds, particularly when the summary judgment motion is grounded on a claim of qualified immunity:

> Rule 56(f) discretion must be limited when a summary judgment motion is based on qualified immunity because insubstantial lawsuits 'against government officials [should] be resolved *prior to discovery and on summary judgment,* if possible.' *Anderson v. Creighton,* 483 U.S. 635, 640 n. 2 [107 S.Ct. 3034, 3039 n. 2, 97 L.Ed.2d 523] (1987) (emphasis added); .... Liberal application of rule 56(f) should not be allowed to subvert the goals of *Harlow* [*v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ] and its progeny.

*Jones v. City and County of Denver, Colo.,* 854 F.2d 1206, 1211 (10th Cir.1988). Accordingly, in response to a summary judgment motion based on qualified immunity, a plaintiff's 56(f) affidavit must demonstrate *"how* discovery will enable them to rebut a defendant's showing of objective reasonableness" or, stated alternatively, demonstrate a "connection between the information he would seek in discovery and the validity of the [defendant's] qualified immunity assertion." *Id.* (emphasis added). To that end, it is insufficient for the party opposing the motion to merely assert that additional discovery is required to demonstrate a factual dispute or "that evidence supporting a party's allegation is in the opposing party's hands." *Id. Patty Precision,* 742 F.2d at 1264.

As in the *Lewis* case and *Redpath v. City of Overland Park,* 857 F.Supp. 1448, 1459–60 (D.Kan.1994), the court believes the plaintiff in the case at bar has failed to explain how any of the proposed discovery would produce specific documents, depositions, or interrogatory answers which would aid in rebutting defendant's showing of objective reasonableness. Plaintiff has not demonstrated how the proposed discovery will show that defendant Grover was motivated by a prejudice against disabled persons in taking the actions complained of by plaintiff. Nor has plaintiff shown how an alleged failure to train others led to a violation of plaintiff's rights against

discrimination under § 1983. It would be relevant to contrast defendant Grover's treatment of plaintiff with his treatment of nondisabled persons who acted similarly. However, the affidavit from plaintiff's attorney does not indicate that such evidence is more than an illusory hope. Accordingly, the court shall not defer from making the rulings set out above while additional discovery is taken.

*Conclusion*

Defendants' motion to amend their motion for summary judgment or to dismiss is granted. Defendants' motion for summary judgment or to dismiss is granted in part and denied in part. The motion is granted as to defendant Barbara Vernon, who is dismissed with prejudice. The motion is denied without prejudice as to plaintiff's outrage claim. The motion is granted as to plaintiff's § 1983 claims against defendant Grover alleging a violation of the due process clause or the equal protection clause. The court directs that any claims under Title VII be dismissed. The court further advises plaintiff to consider amending the complaint to clarify his claims under the ADA and his claims alleging the lack of medical treatment.

**IT IS SO ORDERED.**